# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | | | |
|---|---|---|---|
| INFO LABS INC., | : | | |
| Plaintiff, | : | Civil Action No.: | 19-684 (RC) |
| v. | : | Re Document No.: | 11, 12 |
| UNITED STATES CITIZENSHIP AND IMMIGRATION SERVICES, *et al.*, | : | | |
| Defendants. | : | | |

## MEMORANDUM OPINION

### Granting Plaintiff's Motion for Summary Judgment and Denying Defendants' Cross-Motion for Summary Judgment

Thanks to the H-1B program, non-citizens can temporarily work in the United States if they are sponsored by an employer in a "specialty occupation." Immigration and Nationality Act, 8 U.S.C. § 1101(a)(15)(H)(i)(b). Plaintiff Info Labs Inc. ("Info Labs") filed a H-1B petition on behalf of its intended beneficiary, Mr. Dinesh Kumar Tatavarthi, so that he could work for the company as a computer systems analyst. The petition was denied by the United States Citizenship and Immigration Services ("USCIS") on grounds that Info Labs failed to establish that the position qualified as a "specialty occupation" under the INA and associated regulations. Info Labs then sued USCIS and various officials under the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701 *et seq.*, arguing that the agency's denial was arbitrary and/or capricious. Currently pending before the Court are the parties' cross-motions for summary judgment. For the reasons explained below, the Court grants Plaintiff's motion, denies Defendants', and remands to the agency for further consideration.

# I. BACKGROUND

## A. Legal Framework

Under the INA, employers can petition for H-1B nonimmigrant visas on behalf of alien beneficiaries. 8 U.S.C. § 1184(c)(1). To secure a H-1B visa, an employer first submits to the Department of Labor (DOL) a Labor Condition Application ("LCA"), which identifies the specialty occupation at issue and certifies that the company will comply with the requirements of the H-1B program. 8 U.S.C. § 1182(n)(1). Then, once the DOL has certified the LCA, the employer submits it (together with a Form I-129 petition) to USCIS. 8 C.F.R. § 214.2(h)(4)(i)(B). USCIS ultimately determines whether a position counts as a specialty occupation, *see* 20 C.F.R. § 655.715, and the employer bears the burden of convincing the agency that the position so qualifies and the applicant is otherwise eligible for a visa, *see* 8 U.S.C. § 1361 ("Whenever any person makes application for a visa or any other document required for entry, . . . the burden of proof shall be upon such person to establish that he is eligible to receive such visa.").

For the purposes of the H-1B program, the INA defines a "specialty occupation" as one that requires "(A) theoretical and practical application of a body of highly specialized knowledge, and (B) attainment of a bachelor's or higher degree in the specific specialty (or its equivalent) as a minimum for entry into the occupation in the United States." 8 U.S.C. § 1184(i)(1). The applicable regulations provide more specific criteria (or prerequisites) as to what qualifies:

> To qualify as a specialty occupation, the position must meet one of the following criteria:
> (1) A baccalaureate or higher degree or its equivalent is normally the minimum requirement for entry into the particular position;
> (2) The degree requirement is common to the industry in parallel positions among similar organizations or, in the alternative, an employer may show that its

> particular position is so complex or unique that it can be performed only by an individual with a degree;
> (3) The employer normally requires a degree or its equivalent for the position; or
> (4) The nature of the specific duties are so specialized and complex that knowledge required to perform the duties is usually associated with the attainment of a baccalaureate or higher degree.

8 C.F.R. § 214.2(h)(4)(iii)(A) ("Criteria for H-1B petitions involving a specialty occupation"); *see also Defensor v. Meissner*, 201 F.3d 384, 387 (5th Cir. 2000) ("assum[ing] arguendo that § 214.2(h)(4)(iii)(A) creates [a] necessary and sufficient condition[] for the category of 'specialty occupation'" but acknowledging that the provision could also "be read as merely an additional requirement that a position must meet, in addition to the statutory . . . definition").

### B. Case Background

Info Labs is a software development and technical services company. AR 189.[1] On November 11, 2017,[2] it filed a H-1B "specialty occupation" petition for Mr. Tatavarthi, AR 2, whom it sought to employ as a Computer Systems Analyst, AR 29. The petition included a variety of supporting materials, including a letter from Info Labs describing the duties of the position and explaining the educational background required for the role. AR 48–49.

On May 18, 2020, USCIS sent a request for evidence ("RFE"), which informed Info Labs that the initial evidence did not establish that the contemplated job qualified as a specialty occupation and sought additional proof supporting that classification. AR 4. In response, Info Labs provided a variety of additional evidence, including: (a) a supporting letter from a vendor; (b) relevant excerpts from various DOL documents (including the *Occupational Outlook*

---

[1] "AR" refers to the certified administrative record filed in this case. *See* Joint Appendix, ECF Nos. 21. The corresponding page numbers refer to the stamped Bates numbers.

[2] As described in the Complaint, Mr. Tatavarthi's H-1B history is "complex," involving multiple petitions and amendments. Compl. ¶ 4, ECF No. 1. Mr. Tatavarthi has actually worked for Info Labs, in various roles, since October 2014. *Id.* ¶ 1. But this case concerns only the petition filed on November 7, 2017. *Id.* ¶ 3.

3

*Handbook* and O*Net Online database); (c) a list of companies offering similar job positions and the associated job postings; and (d) a "Specialty Occupation Evaluation" by a Professor Michael Braasch. AR 4. Despite the additional evidence, USCIS determined that Info Labs "ha[d] not established eligibility for the requested classification by a preponderance of the evidence" and denied the petition. AR 5. In its decision justifying the denial, USCIS discussed the § 214.2(h)(4)(iii)(A) criteria and explained why none of the four were met. AR 5–11.

Here, Info Labs seeks review of USCIS's denial. *See* Compl. ¶ 1, ECF No. 1. Currently ripe and pending before the Court are the parties' cross-motions for summary judgment. *See* Pl.'s Points & Authorities Supp. Mot. Summ. J. ("Pl.'s MSJ"), ECF No. 11-1; Def.'s Mem. Supp. Cross-Mot. Summ. J. & Opp'n ("Def.'s XMSJ"), ECF No. 12-1.

## II. LEGAL STANDARD

Normally, summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). But a different standard governs cases involving review of agency action under the APA "because of the limited role of a court in reviewing the administrative record." *Ctr. for Food Safety v. Salazar*, 898 F. Supp. 2d 130, 138 (D.D.C. 2012). In these contexts, "[i]nstead of reviewing the record for disputed facts that would preclude summary judgment, the function of the district court is a more limited one: 'to determine whether or not as a matter of law the evidence in the administrative record permitted the agency to make the decision it did.'" *Ardmore Consulting Grp., Inc. v. Contreras-Sweet*, 118 F. Supp. 3d. 388, 393 (D.D.C. 2015) (quoting *Kaiser Found. Hosps. v. Sebelius*, 828 F. Supp. 2d 193, 198 (D.D.C. 2011)).

4

The ultimate standard is whether the agency action was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). Review under that standard is "highly deferential." *AT&T, Inc. v. FCC*, 886 F.3d 1236, 1245 (D.C. Cir. 2018) (quoting *Nat'l Tel. Coop. Ass'n v. FCC*, 563 F.3d 536, 541 (D.C. Cir. 2009)). For its decision to be upheld, the agency must have only "'examine[ed]' the relevant factors and data and articulate[d] a 'rational connection' between the record and [its] decision." *Id.* (first quoting *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983); then quoting *Burlington Truck Lines v. United States*, 371 U.S. 156, 168 (1962)). At the same time, though, judicial review is not a rubber stamp: a court will find an agency acted arbitrarily or capriciously "if it has relied on factors Congress did not intend it to consider, entirely failed to consider an important aspect of the problem, or offered an explanation either contrary to the evidence before the agency or so implausible as to not reflect either a difference in view or agency expertise." *Defs. of Wildlife v. Jewell*, 815 F.3d 1, 9 (D.C. Cir. 2016).

### III. ANALYSIS

#### A. USCIS's Analysis of the 8 C.F.R. § 214.2(h)(4)(iii)(A) Factors

Plaintiff's overarching argument is that USCIS erred in its analysis of the facts and law with respect to the criteria under 8 C.F.R. § 214.2(h)(4)(iii)(A). *See* Pl.'s MSJ at 9. USCIS counters that its decision was reasonable, based on appropriate considerations, and consistent with the law. *See* Def.'s XMSJ at 2. The Court will discuss each of the factors in turn, keeping in mind that it must consider only "whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment." *ExxonMobil Gas Mktg. Co. v. FERC*, 297 F.3d 1071, 1083 (D.C. Cir. 2002) (quoting *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416 (1971)). It is not enough that the Court "would have come to a

different conclusion" than the agency had it considered the matter *de novo*. *Conservation Law Found. v. Ross*, 374 F. Supp. 3d 77, 89 (D.D.C. 2019).

1. Whether "[a] baccalaureate or higher degree or its equivalent is normally the minimum requirement for entry into the particular position"

In its decision, USCIS reported that it reviewed a variety of evidence relevant to this criterion, but found it all inadequate. AR 5. Specifically, it explained that, in the RFE, it already rejected as "insufficient" Info Labs' own statement that a bachelor's degree or the equivalent was required for the position. *Id.* It considered the entry for "computer systems analyst" in the DOL's *Occupational Outlook Handbook* ("OOH" or "the Handbook"),[3] but determined it was inconclusive, as it "did not indicate that Computer Systems Analyst positions normally require a minimum of a bachelor's degree in a specific specialty." AR 6. It discounted corresponding information from the DOL's *O\*Net Online* (*O\*Net*) database for similar reasons. *Id.* And it declined to defer to the opinion of Professor Braasch, because he "provide[d] no substantiating evidence to support his opinion" and USCIS determined that "[s]imply going on record stating degrees, [sic] is insufficient." *Id.*

In its briefing here, Info Labs primarily challenges USCIS's rejection of evidence from the Handbook. *See* Pl.'s MSJ at 10–11. As the company points out, the Handbook says that "[a] bachelor's degree in a computer or information science field is common, although not always a requirement," that "[m]ost computer systems analysts have a bachelor's degree in a computer-

---

[3] As USCIS explains, "petitioners and USCIS often rely on the Department of Labor's Occupation Outlook Handbook . . . for information regarding the minimum requirements for positions falling into different occupational categories described by the DOL." Def.'s XMSJ at 9; *see also Blacher v. Ridge*, 436 F. Supp. 2d 602, 609 (S.D.N.Y. 2006) ("Reliance on the Occupational Handbook is reasonable in determining whether a proposed position satisfies the requirements of a 'specialty occupation.'"); *Royal Siam Corp. v. Chertoff*, 484 F.3d 139, 146 (1st Cir. 2007) ("In its review of petitions for nonimmigrant work visas, CIS frequently—and sensibly—consults the occupational descriptions collected in the Handbook.").

related field," and that "[a]though many computer systems analysts have technical degrees, such a degree is not always a requirement." AR 346. It also reports that "for more technically complex jobs, a master's degree in computer science may be more appropriate." *Id.* According to Info Labs, all this indicates that "[a] baccalaureate or higher degree or its equivalent is normally the minimum requirement for entry into the particular position." 8 C.F.R. § 214.2(h)(4)(iii)(A)(*1*). USCIS, however, maintains that this language supports the opposite conclusion: namely, that "a bachelor's degree in a specific specialty is *not* normally a minimum requirement for entry in the occupation of Computer Systems Analysts." Def.'s XMSJ at 10 (emphasis added). It stresses other language in the Handbook indicating that "[m]any analysts have liberal arts degrees and have gained programming or technical expertise elsewhere." *Id.* (quoting AR 346).

From the Court's perspective, the Handbook's statement that a bachelor's degree in computer or information science is "common, although not always a requirement" supports, rather than disproves, the proposition that a specialized degree or its equivalent is *normally* the minimum requirement. The fact that such a degree is not "always" required—or that "some firms" hire analysts with general business or liberal arts degrees—does not suggest a specialty degree is not "normally" required. Also suggestive is the language that "most" computer systems analysts have a bachelor's degree in a computer-related field. While this is not phrased in terms of an explicit requirement or condition of employment, it does provide additional support for Info Labs' position when read in context. And finally, the further indication that a *master's* degree in computer science may be more appropriate for "*more* technically complex positions" fairly implies that a specialized bachelor's degree is the typical baseline requirement.

7

The court's analysis in *Next Generation Tech., Inc. v. Johnson*, 328 F. Supp. 3d 252 (S.D.N.Y. 2017) is relevant. There, the OOH entry for "computer programmer" explained that "some employers hire workers with an associate's degree," but went on to say that "[m]ost computer programmers have a bachelor's degree in computer science or a related subject." *Id.* at 267–68. Based on this language, the court concluded that "the Occupational Handbook arguably demonstrates that a bachelor's degree or higher in a specific specialty is 'normal[ly]' the minimum requirement for entry into the position." *Id.* at 268 (quoting 8 C.F.R. § 214.2(h)(4)(iii)(A)(1)).[4] Also helpful is *Xiaotong Liu v. Baran*, No. 18-cv-376, 2018 WL 7348851 (C.D. Cal. Dec. 21, 2018). In *Liu*, the court relied, in part, on "OOH language indicating that 'most' positions require a four-year bachelor's degree" to conclude that "the record establishes that the position normally requires a bachelor's degree or higher." *Id.* at *5. Most recently, Judge Lamberth found that *O\*Net* language indicating that "most" positions require a degree, but "some" do not, ultimately supported the petitioner. *See 3Q Digital, Inc. v. USCIS*, No. 19-cv-579, 2020 WL 1079068, at *3 (D.D.C. Mar. 6, 2020) ("[The regulation] does not say that a degree must always be required, yet the agency appears to have substituted the word 'always' for the word 'normally.' This is a misinterpretation and misapplication of the law, and [one that] effectively hold[s] the plaintiff to a higher standard than that which is set by the regulation . . .").

---

[4] USCIS claims that "*Next Generation* is distinguishable from this case because it involved a different job position, different Handbook language, and was adjudicated based on a different record and based on different agency guidance." Def.'s Reply at 6, ECF No. 19. That is all true, but it has no bearing on *Next Generation*'s analysis of Handbook language that is effectively identical to the language at issue here. *See* 328 F. Supp. 3d at 267 ("[T]his Court is at a loss to see a 'rational connection' between the evidence indicating that '*most* computer programmers *have* a bachelor's degree' and USCIS's determination that 'computer programmers *are not normally required to have* a bachelor's degree.'").

Some divergent authority comes from *Ajit Healthcare Inc. v. DHS*, No. 19-684, 2014 WL 11412671 (C.D. Cal. Feb. 7, 2014). There, the court found "at least a 'rational connection' between the Handbook description of the job in question and the conclusion that a [position] would not normally require a baccalaureate degree or higher" when the relevant OOH entry provided that "[a]lthough bachelor's and master's degrees are the most common educational pathways to work in this field, some facilities may hire those with on-the-job experience instead of formal education." *Id.* at *4 (internal citation omitted). It was enough, *Ajit* concluded, that "the Handbook describes *a pathway* to the position that does not require any formal education." *Id.* (emphasis added). Another district court decision, distinguishing *Next Generation*, found that an OOH entry indicating that "[m]ost computer programmers have a bachelor's degree" did "not describe the normal minimum educational requirements of the occupation in a categorical fashion." *Innova Solutions, Inc. v. Baran*, 399 F. Supp. 3d 1004, 1013, 1015 (N.D. Cal. 2019).[5]

Aware that the precise Handbook language at issue varies across these cases, the Court nonetheless finds the overall thrust of *Liu*, *Next Generation*, and *3Q Digital* more relevant and

---

[5] *Innova Solutions* also seems to suggest that, if the OOH description indicates that some jobs in the field do not require a degree in the specialty, the employer must provide additional evidence indicating that its job is different from those that do not require the specialty degree. 399 F. Supp. 3d at 1015 (finding that petitioner "could not simply rely on the OOH profile," but "had the burden to show that the particular position offered . . . was among the Computer Programmer positions for which a bachelor's degree was normally required."). While this analytical approach has some appeal in principle, it is unclear whether the OOH description provides enough detailed information to enable this kind of comparative analysis. It also significantly raises the burden on a petitioner—if an OOH description acknowledges, in passing, that a particular position *occasionally* does not require a specialty degree, a petitioner must somehow define a new subfield and muster supporting evidence outside of the OOH. This drastically reduces the value of the OOH as an authoritative resource. More fundamentally, it seems to reframe the relevant question: whether a specialty degree is *normally* required. The fact that the OOH recognizes some exceptions should not be fatal or even particularly significant.

persuasive than *Ajit* and *Innova Solutions*.[6] If USCIS wants to discount OOH evidence indicating that a specialty degree requirement is "common" and that "most" people in the position have a degree in a computer-related field, it cannot simply rely on the OOH's recognition that an unspecified number of contrary cases exist. That is not a "fair reading of the Occupational Handbook," *Next Generation*, 328 F. Supp. 3d at 267, or the regulation itself. And because this treatment of the OOH was crucial to USCIS's conclusion that the position did not qualify under this criterion, USCIS's decision under this criterion must be remanded for reconsideration and further explanation.[7]

2. Whether "[t]he degree requirement is common to the industry in parallel positions among similar organizations" or the "particular position is so complex or unique that it can be performed only by an individual with a degree"

As both parties recognize, this criterion has two subparts; in its decision, USCIS analyzed each separately.

As to the first subpart: to determine whether the degree requirement is common in parallel positions, USCIS reviewed Info Labs' letter of support; (b) copies of job postings for computer systems analyst positions (and the associated degree requirements) from various firms; and (c) the specialty occupation evaluation by Professor Raasch. AR 7. The decision acknowledged but did not appear to give weight to the letter itself. *Id.* It dismissed the job

---

[6] *Innova Solutions* and *Ajit* are also distinguishable on their facts: the OOH language at issue in those cases did not include a statement that a relevant bachelor's degree is "common, although not always a requirement." *See Innova Solutions*, 399 F. Supp. 3d at 1013; 2014 WL 11412671, at *4. As discussed, that OOH language is particularly helpful to Info Labs.

[7] When an agency action violates the APA, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985). After all, a reviewing court "is not generally empowered to conduct a *de novo* inquiry into the matter being reviewed and to reach its own conclusions based on such an inquiry." *Id.* However, the Court does take this opportunity to observe that the statute seems designed to apply to jobs like the one at issue and benefit talented, well-educated beneficiaries like Mr. Tatavarthi.

postings because "although a bachelor's degree is required for most of these positions, a bachelor's degree in a specific specialty or its equivalent is not." *Id.* And even then, the postings were for "positions in different industries and dissimilar organizations" and the "generalized" description of the Info Labs position made it impossible to make meaningful comparisons. *Id.* Finally, USCIS declined to credit Professor Raasch's opinion, as it doubted his qualifications and found his submission insufficiently supported by the evidence. *Id.*

The Court harbors doubts about some of USCIS's conclusions. For example, multiple job postings *do* suggest a relevant specialty degree is required. *See, e.g.*, AR 371 (computer systems analyst position listing education requirements as "[a] Bachelor's degree in Computer systems analysis, Computer science, . . . or a similar field of study."); AR 373 (computer systems analyst position listing education requirements as "Bachelor's Degree in a related Computer Technology field."); AR 388 ("Computer Systems Analyst needed w/ Masters degree or Foreign Equivalent in Computer Engineering or Computer Science . . ."). In its briefing here, USCIS seems to hedge slightly, arguing that the agency "concluded that the job announcements did not *all* indicate that a bachelor's degree or higher in a specific specialty was required." Def.'s XMSJ at 12 (emphasis added). But that is not what the USCIS decision said. In any case, by introducing an apparent unanimity requirement, USCIS overstates petitioner's burden, which is to establish that the specialty degree requirement is merely "common."

As discussed, USCIS's fallback argument is that the postings were for jobs in different industries and dissimilar organizations, and Info Labs' job description was too general. AR 8. But the decision does not go into any detail or explain the relevant differences among the postings, or explain why the generality of the posting frustrated a reasonable comparison. Of course, no two positions or companies are identical, and USCIS will always be able to point to

11

*some* differences. But the lack of reasoning and explanation makes it impossible for the Court to endorse the agency's ultimate conclusion. *See Susquehanna Int'l Grp., LLP v. SEC,* 866 F.3d 442, 449 (D.C. Cir. 2017) (observing that a "lack of reasoned decisionmaking" is enough to make an agency decision arbitrary and capricious). USCIS offers some grounds for distinguishing the postings in its briefing here. *See* Def.'s Reply at 8–9. But it is well-established that an agency "cannot fill the holes of [its] decision by providing post hoc explanations in its briefs." *Mori v. Dep't of the Navy*, 917 F. Supp. 2d 60, 66 (D.D.C. 2013) (citing *Camp v. Pitts*, 411 U.S. 138, 143 (1973)). Accordingly, USCIS's decision must be remanded for reconsideration and further explanation of its treatment of the comparator job postings.

USCIS's treatment of Dr. Braasch's opinion is a different matter. USCIS concluded that he had not provided evidence that his prior opinions had been recognized as authoritative, and that there was no indication that he had conducted any relevant research or studies. AR 8. It also found that Dr. Braasch had not supported his opinion with sufficient evidence; for instance, he provided a brief, general description of Info Labs' business activities, but did not demonstrate an in-depth knowledge of its operations. *Id.* While this Court does not necessarily share USCIS's skepticism of Dr. Braasch's opinion, the agency is entitled to its own evaluation of an expert opinion and can generally give it the weight it deems appropriate. In light of its narrow standard of review, the Court sees no basis for disturbing the agency's discounting of Dr. Braasch's opinion. *See Sagarwala v. Cissna*, 387 F. Supp. 3d 56, 66 (D.D.C. 2019) ("USCIS could have, in its discretion, accepted [a] professional opinion, but, absent more support, the agency certainly was not required to.").

As to the second subpart: to determine whether the position is so complex or unique that it can be performed only by an individual with a degree, USCIS reviewed the petitioner's description of the offered position, a letter of support from an Info Labs' vendor, and Professor Braasch's opinion. AR 9. It concluded that none of this indicated that the particular position was sufficiently complex. *Id.* Here, Plaintiff primarily argues that USCIS ignored an "expanded itinerary" which expounded on the position's job duties, but, as USCIS explains, it did also consider the description of job duties provided with the RFE. Def.'s XMSJ at 22–23. Accordingly, the Court sees no basis for disturbing the agency's conclusion as to the second prong.

3. Whether "[t]he employer normally requires a degree or its equivalent for the position"

To evaluate this criterion, USCIS reviewed a variety of evidence, including a statement from Info Labs that "each employee assigned to this project with our company posses[es] at least a bachelor's degree in an industry-recognized field" and an accompanying Organizational Chart. AR 10. It found this insufficient to demonstrate that Info Labs "historically hired individuals who hold at least a bachelor's degree in a specific specialty, or its equivalent, for employment" in the position. *Id.* Info Labs has not challenged the USCIS conclusion as to this criterion, and the Court accordingly declines to disturb it.

4. Whether "[t]he nature of the specific duties are so specialized and complex that knowledge required to perform the duties is usually associated with the attainment of a baccalaureate or higher degree"

Finally, as to this criterion, USCIS reviewed Info Labs' letter of support and Dr. Braasch's expert opinion letter. AR 10. Without much explanation, USCIS concluded that "[d]ue to the lack of detail in the description you have provided, it cannot be determined that these duties would require the theoretical and practical application of a body of highly specialized knowledge." *Id.*

13

In challenging USCIS's conclusion, Info Labs again argues that USCIS ignored the "expanded itinerary" that it submitted. Pl.'s MSJ at 14. But as discussed above, the record does indicate that USCIS reviewed all the evidence provided. Additionally, Info Labs takes issue with the decision's statement that "[Info Labs has] not described with sufficient detail how [the duties] are more specialized and complex than those of other Computer Systems Analyst positions," AR 10, which Info Labs claims is a misstatement of the governing regulatory test, Pl.'s MSJ at 14. But as USCIS explains, the decision "simply made the point that Plaintiff had not provided evidence that the position intended for Mr. Tatavarthi was any more specialized or complex than the standard Computer Systems Analyst position, which clearly does not require a bachelor's degree." Def.'s XMSJ at 23–24. The Court agrees with this reading of the decision and sees no basis for overturning the agency's decision as to this criterion. Of course, however, for the reasons already discussed, *see* Section III.A.1 *supra*, the premise underlying USCIS's statement (*i.e.*, that the standard position does not require a specialty degree) needs to be reconsidered.

## IV. CONCLUSION

For the foregoing reasons, Info Labs' motion for summary judgment is **GRANTED**, and Defendants' cross-motion for summary judgment is **DENIED**, to the extent that this Court finds that, in denying Info Labs' petition, USCIS disregarded or failed to explain why it discounted substantial evidence in the record that supported a determination that Info Labs had met the requirements for approval of an H-1B visa petition under 8 C.F.R. § 214.2(h)(4)(iii)(A)(1) and (2), and that USCIS's decision was therefore arbitrary and capricious. This matter is remanded to USCIS for further proceedings consistent with this Memorandum Opinion. A corresponding order is separately and contemporaneously issued.

Dated:  March 31, 2020                                          RUDOLPH CONTRERAS
                                                                United States District Judge